PRESENT:  All the Justices

SADDLEBROOK ESTATES COMMUNITY
ASSOCIATION, INC.

OPINION BY
v.  Record No. 151191                                   JUSTICE WILLIAM C. MIMS
                                                                        June 2, 2016
CITY OF SUFFOLK


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Carl E. Eason, Jr., Judge


In this appeal, we consider whether the definition of "open or common space" in Code §

58.1-3284.1(A) excludes real property used for a commercial enterprise.

I.  BACKGROUND AND MATERIAL PROCEEDINGS BELOW

Christina Gray obtained a conditional use permit for a cluster development on a parcel of

real property situated in the City of Suffolk.  The development proposal included an equestrian

center.  Gray thereafter conveyed the parcel to Kings Fork, LLC ("Kings Fork").  Kings Fork set

aside a portion of the parcel as the Equestrian Center Parcel ("the ECP").

Kings Fork leased the ECP to David Christiansen and Indian Point Farms, LLC ("Indian

Point") through December 2019 to establish and operate a riding school and stable called Indian

Point Stables ("the Stable").  The lease provided that Christiansen and Indian Point "shall pay all

City of Suffolk real estate taxes owed" on the ECP during the term of the lease.  The lease

expressly anticipated that Kings Fork's ownership interest in the ECP would later be conveyed to

the planned property owners' association for the surrounding residential subdivision, which was

subsequently organized as the Saddlebrook Estates Community Association, Inc. ("the

Association").  Although the Stable could sell its services to non-members, the lease required

Christiansen and Indian Point to give preferential treatment to members of the Association.

Kings Fork subsequently conveyed the ECP and other common areas by deed of dedication to the Association. The Association's declaration included the ECP within the Association's property but noted that it was leased to Christiansen and Indian Point. The declaration also conveyed an easement of enjoyment in all Association property, including the ECP, to the Association's members, subject, among other things, to the Association's right to enter into agreements for the operation of the Stable.

The City of Suffolk began assessing real estate tax on the ECP for the tax year ending in June 2009. In August 2012, the City exonerated the Association of any liability for tax on the ECP for the tax years ending in June 2009, 2010, and 2011. The City again assessed real estate tax on the ECP for the tax years ending in June 2012, 2013, 2014, and 2015. These later assessments identified the Association as the owner of the ECP and were sent to "Saddlebrook Estates Comm Assoc c/o David Christiansen." No one paid the assessments.

In February 2014, the City published a notice advertising that the ECP would be sold at auction for non-payment of taxes. The Association filed a complaint seeking a stay of the sale and a declaratory judgment (1) that it was not liable for the assessments, and (2) that the ECP could not be directly assessed because under Code § 58.1-3284.1(A) any tax due was payable only by the Association's various individual members.[1] The City filed an answer denying that the ECP qualified under the statute.

---

[1] While the case was pending below, the Association sold a lot from the ECP to Christiansen and his wife to use as their residence. The parties do not dispute the Association's authority under the declaration to convey this lot, and the Association concedes that the City has the authority to assess real estate tax on it from the date of the deed, for which the Christiansens would be liable. The question of whether the City may assess them for real estate tax on this lot after this conveyance is therefore not within the scope of this appeal.

The case proceeded to a bench trial. At the conclusion of the Association's evidence, the City moved to strike.[2] The circuit court ruled that the Stable was a commercial enterprise and that the General Assembly did not intend "open or common space" as used in Code § 58.1-3284.1(A) to include real estate used for the operation of commercial enterprises open to non-members of a property owners' association. It therefore granted the City's motion. It thereafter entered a final order incorporating its bench rulings on the motion to strike and dismissing the complaint with prejudice.

We awarded the Association this appeal.

## II. ANALYSIS

In its first assignment of error, the Association asserts that the circuit court erred in its interpretation of Code § 58.1-3284.1(A). It argues that the definition of "open or common space" in the statute does not exclude real property used for commercial enterprises. It further argues that at common law, the value of an easement is assessed against the owner of the dominant estate and the value of the servient estate is reduced accordingly. Thus, it continues, in Lake Monticello Owners' Association v. Ritter, 229 Va. 205, 327 S.E.2d 117 (1985), this Court ruled that the value of common area owned by the property owners' association could be assessed only against the association's members, not the association itself. The Association further argues that Code § 58.1-3284.1 was originally enacted by the General Assembly while Lake Monticello was pending to codify that principle. The principle controls here, the Association concludes, because (1) the Stable was intended to be an essential part of the

_____

[2] The City argued among other things that it had not assessed the tax against the Association but against Christiansen, in his capacity as a lessee, under Code § 58.1-3203. However, at oral argument on appeal, the City conceded that it sent the assessments only "c/o David Christiansen" and that Indian Point was not identified on the assessments at all. Accordingly, the assessments were sent only to the Association, not to the lessees.

3

subdivision going all the way back to the original conditional use permit, (2) the Association's declaration included the ECP in its definition of the common area, and (3) the ECP is for the benefit of the Association's members, subject only to agreements necessary for the operation of the Stable. We agree.

We review questions of statutory interpretation de novo. Sheppard v. Junes, 287 Va. 397, 403, 756 S.E.2d 409, 411 (2014). We presume that the legislature completely expressed its intention in the statutory language it enacted unless that language is ambiguous or leads to an absurd result. Id. The statutory language at issue here is not ambiguous and does not lead to an absurd result. We will therefore give effect to its plain meaning.

Code § 58.1-3284.1(A) provides that

> [r]esidential or commercial property, which is part of a planned development which contains open or common space, which includes the right by easement, covenant, deed or other interest in real estate, to the use of the open or common space, shall be assessed at a value which includes the proportional share of the value of such open or common space.
> All real property used for open or common space pursuant to this section shall be construed as having no value in itself for assessment purposes. Its only value lies in the value that is attached to the residential or commercial property which has a right by easement, covenant, deed or other interest.

It then proceeds to define "open or common space" as used in these paragraphs to include in relevant part "parks, parking areas, private streets, walkways, recreational facilities, natural or improved areas, lakes, ponds, recreational, community service, or maintenance buildings or structures, or any other property used and owned by an automatic membership corporation or association." Id.

The first two paragraphs of the statute are consistent with the common law principle cited by the Association and applied in Lake Monticello. 229 Va. at 208-09, 327 S.E.2d at 119. Under the second paragraph, the entire value of the fee of the common area is wholly consumed

4

by the easement conveyed for the benefit of the Association's members. Thus, the value of the common area to the servient estate, which the Association owns, is reduced to nothing by operation of the statute. However, the common area is not exempt from taxation. Rather, the second paragraph sets the value for assessment purposes as the value the common area provides to the dominant estate (i.e., the lots in the subdivision, which benefit from the easement). This is not the value of the fee of the common area itself, but the value by which access to and use of the common area augments the value of the lots. The first paragraph then makes the owners of the dominant estate (i.e., the owners of the lots), and only them, liable for the tax assessed on that value in proportion to each owner's respective lot as a percentage of the whole subdivision. The statute therefore directs localities both how to ascertain the value of the common area and whom to assess for payment of the tax.[3]

We must next consider whether the ECP is within the Association's common area, or more precisely, whether it is within the statutory definition of "open or common space." We agree with the Association that it is.

Although the City argues that real property used for commercial enterprises is not within the meaning of "open or common space" as used in the statute, nothing in the statutory definition excludes such real property. To the contrary, the statutory definition expressly includes both

_____

[3] We note that the lease required the lessees to pay all real estate taxes. The lease was executed in December 2002 and the Association's declaration was executed in March 2005, during which time Code § 58.1-3284.1(A) could not apply to the ECP because no easement for the benefit of the Association's members existed. Whether the Association may or may not enforce the tax liability provision of the lease against the lessees after the easement was conveyed is not within the scope of this appeal. Our holding is simply that the statute prohibits the City from assessing anyone other than the owners of the subdivision's lots.

"recreational facilities" and "any . . . property used and owned by an automatic membership corporation or association." Code § 58.1-3284.1(A).[4]

Further, despite the City's argument to the contrary, the facts in Lake Monticello are indistinguishable from those in this case. The common area in Lake Monticello included a golf course and other recreational facilities. The property association there sold course memberships to non-members of the association to raise additional revenue rather than fund the operation of the course solely from members' association fees. 229 Va. at 207-08, 327 S.E.2d at 118-19. Like the golf course in Lake Monticello, the Stable is open to non-members and the profits of the commercial enterprise are used to defray the Association's operating costs, thereby reducing its members' association fees. Further, a member of the Association testified that he and other members benefited from the Stable, as witnesses in Lake Monticello testified that they benefited from the golf course. 229 Va. at 210, 327 S.E.2d at 120.

The record in this case also includes testimony that even Association members who did not board horses at the Stable used its picnic tables, trails, and parking area. Families used the ECP to ride bikes, walk dogs, push strollers, gather pecans, and watch and interact with the horses. The fact that the Association operated the Stable through a lease agreement with Christiansen and Indian Point and collected the supplemental revenue derived from the Stable's profit in the form of a lease payment from the lessees, rather than operating the Stable and collecting user fees directly, as the Lake Monticello association did for its golf course, is a

---

[4] The City also argues that the circuit court ruled that the members must have the exclusive use of the common area and found that the Association's members did not have exclusive use of the ECP. However, while the court mentioned in its bench ruling that the members did not have exclusive use of the Stable, it expressly struck that ground from its final order. Courts speak only through their written orders and we do not consider grounds of decision purposely excluded from them. See Manchester Oaks Homeowners Ass'n v. Batt, 284 Va. 409, 419 n.6, 732 S.E.2d 690, 696 n.6 (2012).

distinction without a difference.  Code § 58.1-3284.1(A) does not prohibit associations from entering into agreements with outside entities for the operation of recreational facilities within their common areas, and such contractors may reasonably expect to profit from such agreements.[5]

The City also argues that under <u>Keswick Club, L.P. v. County of Albemarle</u>, 273 Va. 128, 639 S.E.2d 243 (2007), it is required to assess the ECP at its fair market value, which must include the commercial enterprise.  The City is correct that we noted in <u>Keswick Club</u> that the Constitution of Virginia requires real property to be assessed at fair market value.  273 Va. at 136, 639 S.E.2d at 247.  However, the City's precise argument here contravenes the actual constitutional language, which requires real property to be assessed at "fair market value, to be ascertained as prescribed by law."  Va. Const. art. X, § 2.  As noted above, Code § 58.1-3284.1(A) prescribes how to ascertain the fair market value of a property owners' association's common area, which is significantly encumbered by the easement for the benefit and use of the association's members.  Under the statute, the assessable value is the value the common area adds to the lots within the subdivision.

Finally, the City argues that if it failed to assess the Stable as a commercial enterprise, it would violate article X, § 1 of the Constitution of Virginia, which requires all real property of the same class to be assessed uniformly.  However, there is no constitutional violation because Code § 58.1-3284.1(A) creates a class of real property, specifically "open or common space" as defined therein, and provides a uniform method for its assessment.

---

[5] Nothing in our decision today affects any authority localities may have to regulate land use through their zoning ordinances, which authority may or may not include restricting the use of real property within a cluster development for commercial enterprises.  That question is not before us in this case and we do not decide it here.

7

III.  CONCLUSION

For the foregoing reasons, the circuit court erred by ruling that the ECP did not fall within the meaning of "open or common space" as defined by Code § 58.1-3284.1(A) because the Stable is a commercial enterprise.  Accordingly, we will reverse the court's judgment, vacate the assessments, and enter final judgment for the Association.[6]

Reversed, vacated, and final judgment.

---

[6] Because the City did not in fact assess the lessees, we do not consider the Association's second assignment of error that the City had no authority to do so under Code § 58.1-3203.